UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SCHOLL'S 4 SEASONS MOTOR SPORTS, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| | ) | No. 09 C 7954 |
| v. | ) ) | |
| ARCTIC CAT SALES, INC., | ) ) | Hon. George W. Lindberg Senior U. S. District Judge |
| Defendant. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Scholl's 4 Seasons Motor Sports, Inc., filed a complaint alleging claims of

violation of the Illinois Franchise Disclosure Act (IFDA), 815 ILCS 705/3, *et seq.*, breach of

contract, promissory estoppel and violation of the Illinois Equipment Fair Dealership Law

(IEFDL), 815 ILCS 715/2, against defendant, Arctic Cat Sales, Inc.  Defendant filed a

counterclaim alleging breach of contract and unjust enrichment.  On February 23, 2010, the

court dismissed plaintiff's IEFDL claim for failure to state a claim upon which relief could be

granted.  Before the court is defendant's motion for summary judgment.  For the reasons stated

below, the motion is granted in part and denied in part.

The following facts are undisputed.  During the relevant period, defendant was a

manufacturer of all-terrain vehicles (ATVs) and snowmobiles, with its principal place of

business in Thief River Falls, Minnesota.  Plaintiff was an Arctic Cat dealer selling ATVs and

snowmobiles, with its principal place of business in Elgin, Illinois.  Many Arctic Cat dealers,

including plaintiff, financed their purchases through third party creditors.

Plaintiff began selling Arctic Cat products in 1983, and defendant entered into Dealer

Agreements with plaintiff. Both parties cite to provisions of two 2007 Dealer Agreements. A more recent agreement, however, is mentioned in defendant's statement of material facts in support of its motion for summary judgment. Plaintiff agrees there is a more recent agreement, but neither party has produced this agreement, and the parties disagree about its contents.

Defendant, through its regional and district sales managers, pitched dealer sales and incentive programs to plaintiff. Plaintiff participated in these programs, in which defendant would pay a portion of plaintiff's interest payments to third party creditors for Arctic Cat inventory in return for plaintiff purchasing a qualifying number of defendant's products. Plaintiff at all times determined the number of ATVs and snowmobiles it purchased, the price at which to sell these vehicles, and the extent to which plaintiff would participate in the incentive programs.

Plaintiff encountered business difficulties in 2003. Plaintiff's sales of ATVs and snowmobiles declined and plaintiff became overstocked, and was required to make interest payments on all of its Arctic Cat inventory. Plaintiff requested assistance from defendant in making interest payments on its inventory, and taking back some of its overstocked ATVs and snowmobiles on which it was making interest payments. Defendant did provide some assistance to plaintiff by making some interest payments on plaintiff's behalf, and by taking possession of some of plaintiff's inventory. In August 2008, plaintiff's third party creditor lowered plaintiff's credit limit further hurting plaintiff's business prospects.

By April 2009, plaintiff had ceased making payments to defendant for Arctic Cat products plaintiff had previously ordered. In July 2009 defendant informed plaintiff of the

outstanding debt plaintiff owed, $75,073.03. On August 18, 2009, defendant sent plaintiff a

notice stating that plaintiff had ten days to pay the money it owed defendant or the Dealer

Agreement would be terminated. Plaintiff failed to pay its debt to defendant and, on August 31,

2009, defendant terminated its Dealer Agreement with plaintiff.

On November 18, 2009, plaintiff filed suit in the Circuit Court of Cook County, Illinois,

alleging claims of violation of the Illinois Franchise Disclosure Act, 815 ILCS 705/3, *et seq.*,

and breach of contract against defendant. Defendant removed the action to this court on

December 23, 2009.

Summary judgment will be granted "if the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material fact

and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The court

must draw all reasonable inferences in favor of the nonmoving party. *Reeves v. Sanderson*

*Plumbing Prods, Inc.*, 530 U.S. 133, 150 (2000). The moving party bears the initial burden of

demonstrating that no material issue exists for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

(1986). Once the moving party has properly supported its motion, the nonmoving party must

offer specific facts demonstrating that a material dispute exists, and must present more than a

scintilla of evidence to support its position. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242,

251-52 (1986). "When the non-moving party fails to establish 'the existence of an element

essential to that party's case, and on which that party will bear the burden of proof at trial,' Rule

56(c) mandates entry of summary judgment against that party because 'a complete failure of

proof concerning an essential element of the nonmoving party's case necessarily renders all

other facts immaterial.'" *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006) (quoting

*Celotex*, 477 U.S. at 322-23)).

Count I of plaintiff's first amended complaint alleges that defendant terminated the Dealer

Agreement without good cause in violation of the IFDA. Assuming that plaintiff was a franchisee,

IFDA section 19(a) states that it is unlawful for a "franchisor to terminate a franchise of a

franchised business . . . prior to the expiration of its term except for 'good cause.'" 815 ILCS 705.

The IFDA's definition of good cause includes "the failure of the franchisee to comply with any

lawful provisions of the franchise or other agreement and to cure such default after being given

notice thereof and a reasonable opportunity to cure such default, which in no event need be more

than 30 days." 815 ILCS 705/19(b). Plaintiff admits that it voluntarily stopped making payments

to defendant, and that defendant sought to collect these payments beginning in April 2009.

Plaintiff contends that, because defendant did not specifically note that the Dealer Agreement

would be terminated if plaintiff did not pay, defendant's notice to plaintiff about the default

violates the IFDA. The court finds no authority to support plaintiff's contention. Given that

defendant attempted to collect plaintiff's debt for months, the ten days provided in defendant's

notice of termination on August 18, 2009, was reasonable, and defendant's termination of the

Dealer Agreement was in compliance with the IFDA.

To prevail on Count II's promissory estoppel claim, plaintiff will have to prove that: "1)

defendant[] made an unambiguous promise to plaintiff; 2) plaintiff relied on such promise; 3)

plaintiff's reliance was expected and foreseeable by defendant[]; and 4) plaintiff relied on that

promise to its detriment." *Quake Construction, Inc. v. American Airlines, Inc.*, 141 Ill.2d 281,

309-10 (1990). Plaintiff's promissory estoppel claim stems from discussions between plaintiff and defendant about defendant removing plaintiff's overstocked inventory. Plaintiff allegedly relied upon defendant's purported promise to remove excess inventory when it ordered additional Arctic Cat ATVs and snowmobiles. The record indicates, however, that plaintiff was aware that defendant's program for removing overstocked inventory depended on other Arctic Cat dealers requesting that inventory. Further, defendant's regional manager indicated he would "try" to help plaintiff by removing thirty overstocked ATVs. Both of these facts demonstrate that the discussions between defendant and plaintiff about removing excess inventory did not include any unambiguous promise to do so.

As to Count III's breach of contract claim, the most recent Dealer Agreement between plaintiff and defendant is conspicuously absent from the record. Both parties refer to sections of the 2007 Dealer Agreements, but disagree about whether the most recent Dealer Agreement contains identical provisions. Defendant alleges that the relevant sections of the most recent agreement are identical to those in the 2007 Dealer Agreements. Plaintiff, however, disputes this claim that the Dealer Agreement sections are the same. Most significantly, neither party established the terms of the most recent Dealer Agreement in their Local Rule 56.1 statement of material facts.

Plaintiff alleges that defendant violated sections 3.1 and 16.3 of the 2007 Dealer Agreements. However, plaintiff has failed to establish the terms of these sections that defendant allegedly breached. Summary judgment is appropriate if a party cannot make a showing of an element essential to his claim. *Celotex*, 477 U.S. at 323. Therefore, defendant is entitled to

summary judgment on plaintiff's Count III, because on that claim plaintiff has the burden of proving breach of the contract.

Even assuming that the relevant sections of the most recent Dealer Agreement are identical to the 2007 agreements, defendant would still prevail on its summary judgment motion. Pursuant to section 20.8 of the 2007 Dealer Agreements, Minnesota law governs plaintiff's claim and defendant's counterclaim for breach of contract. A "claim for breach of contract requires proof of three elements: 1) the formation of a contract, 2) the performance of conditions precedent by the plaintiff, and 3) the breach of the contract by the defendant." *Thomas B. Olson & Assoc., P.A. v. Leftward, Jay & Polglaze, P.A.,* 756 N.W. 2d 907, 918 (Minn. App. 2008). The only element at issue is whether either party breached the contract.

Plaintiff admits that it ceased making payments to defendant in violation of the Dealer Agreement, but alleges that defendant's breach excused plaintiff's default. Again, plaintiff alleges defendant violated section 3.1 and section 16.3 of the Dealer Agreement. Section 3.1 states that plaintiff agrees to "[p]romote and sell Products sufficient to achieve a share of market satisfactory to [defendant]." This section of the purportedly identical 2007 Dealer Agreements describes plaintiff's obligations to defendant, and so defendant could not violate this section. Section 16.3 states that this Agreement may be terminated by defendant "upon 10 days written notice to [plaintiff] in the event any sums owed [defendant] are not paid by [plaintiff] when due, provided that all such sums are not paid to [defendant] within this 10 day period." Plaintiff claims that defendant terminated the Dealer Agreement prior to the ten day period, but the record indicates that plaintiff received the ten day notice on August 21, 2009, and that the Dealer Agreement was

terminated on August 31, 2009. Plaintiff does not point to anything in the record to indicate defendant terminated the Dealer Agreement prior to August 31, 2009.

As to Count I of defendant's counterclaim, breach of contract counterclaim, defendant alleges that plaintiff violated provisions of the Dealer Agreement. As the party moving for summary judgment, defendant must refer to "affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph." N.D. Ill. Loc., R 56.1(a)(3). Defendant did not cite to anything in the record establishing the terms of the most recent Dealer Agreement, nor has the most recent Dealer Agreement been produced in the record. Defendant has the burden of showing the terms of the contract, which defendant alleges plaintiff breached. Thus, defendant is not entitled to summary judgment on its breach of contract counterclaim (Count I).

ORDERED: Defendant's motion for summary judgment [75] is granted in part and denied in part. The motion is granted as to Count's I, II and III of plaintiff's Claim, and denied as to defendant's Counterclaim Count I.

ENTER:

_____
GEORGE W. LINDBERG
Senior U.S. District Judge

Dated: November 16, 2010

7