IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SCHOLL'S 4 SEASONS MOTOR SPORTS, INC. | ) ) ) | |
| Plaintiff, | ) ) | Case No. 09 C 7954 |
| v. | ) ) | Magistrate Judge Susan E. Cox |
| ARCTIC CAT SALES, INC. | ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Scholl's 4 Seasons Motor Sports, Inc. ("Scholl's") filed this action against defendant Arctic Cat Sales, Inc. ("Arctic Cat") alleging various causes of action, all of which were rejected by the district judge who originally presided over this case in a ruling entering summary judgment against Scholl's and in favor of Arctic Cat.[1] Arctic Cat counter-sued alleging two different theories of recovery against Scholl's. The first is that Scholl's breached its obligations under the 2008 and 2009 Dealer Agreement when it took inventory of Arctic Cat all-terrain vehicles (ATVs) and snowmobiles, but refused to pay the invoiced amounts. This breach, according to Arctic Cat, entitles it to the amount of the unpaid invoices ($74, 922.83), its attorneys' fees (unspecified) and interest calculated at the rate of 1.5% per month on the unpaid balances ($56,536.88 as of June 12, 2012.) In the alternative, Arctic Cat claims that Scholls was unjustly enriched as a result of Scholl's taking its product, but not paying for it.

---

[1]Plaintiff originally filed this suit in the Circuit Court of Cook County. The action was removed to this Court on December 23, 2009 because the parties are diverse and the amount in controversy exceeded $75,000.

Arctic Cat originally filed for summary judgment on its breach of contract claim as well but the district judge denied it because Arctic Cat failed to submit to the Court a signed Dealer Agreement between the parties or any evidence that such an agreement existed between the parties after 2007. As the Court will explain further below, Arctic Cat has never been able to adduce any proof that it ever signed these agreements with Scholl's for 2008 or 2009, although Arctic Cat sent them to Scholl's and Scholl's signed them.

The parties consented to our jurisdiction in this case and the matter ultimately was tried to the Court in June, 2012. The only witnesses at the trial were Ann Joppru, Arctic Cat's Credit Manager and Michael Scholl, the owner of Scholl's. After the bench trial, the Court asked both sides to submit proposed findings of fact and conclusions of law. Because neither side addressed the issue of an award of interest should Arctic Cat prevail - not on its breach of contract claim but instead on its claim for unjust enrichment - the Court also requested that supplemental authority on this point be provided.

The following are the Court's Findings of Fact and Conclusions of Law.

### Findings of Fact

1.    Arctic Cat Sales, Inc. is a Minnesota corporation with its principal place of business in Minnesota.

2.    Scholl's 4 Seasons Motor Sports is an Illinois corporation with its principal place of business in Elgin, Illinois.

3.    Arctic Cat is a distributor of ATVs and snow mobiles and related parts, oil, clothes and accessories.

4.    Scholl's sells this same kind of equipment to its customers.

5.      Scholl's and Arctic Cat previously had entered into so-called Dealer Agreements which governed the terms and conditions of the sale of Arctic Cat merchandise.

6.      Such Agreements provided that Scholl's was to pay for any merchandise it ordered and that the "dealer shall reimburse Company for any and all finance charges, collection costs, attorneys' fees and expenses incurred by the Company in obtaining payment on any sums due the Company from Dealer."[2]

7.      In 2008, Arctic Cat sent Michael Scholl a Dealer Agreement which included this language. However, although Scholl admitted he signed the agreement, he never received a signed copy of it back from Arctic Cat despite frequent requests for that agreement.[3]

8.      Arctic Cat did not produce a signed Dealer Agreement for 2008, nor did any witness from Arctic Cat testify that s/he executed such an Agreement with Scholl's.

9.      In 2009, Arctic Cat sent Michael Scholl a Dealer Agreement which included this language. However, although Scholl admitted he signed the agreement, he never received a signed copy of it back from Arctic Cat.[4]

10.     Arctic Cat did not produce a signed Dealer Agreement for 2009, nor did any witness from Arctic Cat testify that s/he executed such an Agreement with Scholl's.

11.     Ann Joppru, the only witness who testified from Arctic Cat, did not know whether there was a Dealer Agreement in effect between the parties in 2009, although she "assumed" there must be.  She also did not contact anyone at Arctic Cat to find out

---

[2]Tr. Ex 1-3, Sections 5.2 and 5.8.
[3]Tr. Transcript at 151-152, 177, dkts. 196 and 197.
[4]Tr. Transcript at 123, dkt. 197.

whether there was one in effect before contacting Scholl's about unpaid balances owed under the Agreement in August 2009.[5]

12.     In deposition testimony admitted at trial, Mary Ellen Walker, Arctic Cat's Vice-President and General Manager of the Part's Division testified that she had not seen an executed Dealer Agreement for 2009 and did not know whether one existed.[6]

13      Ann Joppru described the process of ordering equipment as follows: Purchasers such as Scholl's ordered vehicles and equipment on line.  After such an order was placed, monthly statements were generated based on the orders received.  Joppru received credits on these invoices for merchandise rebates as well.[7]

14.     Arctic Cat regularly sent these monthly statements to Schools which stated what had been ordered, what  Scholl's owed it and which credited previous monies paid by Scholl's to Arctic Cat to the unpaid balances.  The same form was used consistently throughout Arctic Cat's relationship with Scholl's.[8]

15.     At the top of each of these statements, Arctic Cat stated that if the invoice was unpaid, Scholls would have to pay 1.5% per month in interest on the overdue amounts.[9]

16.     When dealers believed that there was a problem with the invoice, they routinely contacted Arctic Cat and asked for clarification.  Michael Scholl never complained about the invoices to Joppru who was the credit manager and to whom such

---

[5]Tr. Transcript at 74-75, 80, dkt. 197.
[6]Tr. Transcript at 195, dkt. 196.
[7]Tr. Transcript at 23-25, 30-32, dkt. 197.
[8]Tr. Exs. 10-28.
[9]*Id.*

complaints would be referred. Michael Scholl never called her back after she contacted him about unpaid amounts.[10]

17.     Monies paid by Scholls to Arctic Cat were applied to the oldest unpaid invoiced amounts unless the dealer elected differently.

18.     Arctic Cat, through Joppru, sent three different letters to Michael Scholl concerning the unpaid balances.[11] Scholl admitted he knew that he was in default on unpaid invoices but did not send a written response to these letters or attempt to contact Joppru in any way.

19.     Scholl admitted that he owes Arctic Cat money. Specifically, he admitted that he sold Arctic Cat equipment but did not pay his debt to Arctic Cat.[12]

20.     Arctic Cat's Trial Exhibit 29 accurately states both the unpaid balances and the interest that would be due on these balances.

21.     The checks that Scholl's claimed were not properly credited to its account were, in fact, so credited.[13]

22.     Michael Scholl was unable to explain credibly how he arrived at an amount due and owing to Arctic Cat of $45,993.86 other than to claim, without adequate explanation, that credits were not properly applied to his account.[14] Scholl's Ex. 9, which was never produced during discovery or to Arctic cat before trial, does not set forth a credible explanation for these credits.

---

[10]Tr. Transcript at 85–86, dkt. 197.
[11]Tr. Transcript at 134–135, dkt. 197; Tr. Ex. 5, 6 and 7.
[12]Tr. Transcript at 118, dkt. 197.
[13]Tr. Transcript at 63–69, dkt. 197; Tr. Ex. 8, 30.
[14]Tr. Transcript at 171–73, dkt. 196.

23.     The Court finds that the principal amount due and owing is $74, 922.83.

24.     Under the Dealer Agreement and pursuant to the 1.5% per month assessed on unpaid

balances, which was specified on each and every monthly statement sent to Scholl's,

the total amount of interest up to the beginning of the trial is $56,536.88.

## Conclusions of Law

A.      **Jurisdiction and Venue**

1.      This Court has jurisdiction of this case pursuant to 28 U.S.C. § 1332 (a)(1)

because the parties are diverse:  Scholl's is a citizen of Illinois and Arctic Cat of

Minnesota, and the amount in controversy (the sums owed and attorney's fees

claimed) exceeds $75,000.

B.       **Breach of Contract Claim**

1.      Arctic Cat has claimed that Scholl's breached the 2008 and 2009 Dealer Agreements

when it failed to pay the balances owed on equipment ordered by it.  (It does not

contend that each transaction wherein Scholl's ordered equipment and was invoiced

for it is a separate contractual agreement between the parties.)

2.      To prove a breach of contract claim under Illinois law (which the parties agree

applies to the Court's analysis in this case), Arctic Cat must prove: (1) the existence

of a valid and enforceable agreement; (2) performance by plaintiff, (3) breach by

defendant, and; (4) injury to plaintiff.[15]

3.      In this case, Arctic Cat fails to carry its burden at step one of the analysis.  There is

simply insufficient evidence that an enforceable Dealer Agreement existed between

---

[15]*Henderson-Smith & Assoc. Inc. v. Nahamani Family Service Center, Inc.,* 323 Ill.App.3d 15, 27, 752
N.E.2d 33 (1st Dist. 2001).

the parties in 2008 and 2009 (the time period during which Scholl's failed to pay invoices).

4.   The most that Arctic cat proved is that it sent such agreements to plaintiff and he signed them, but there is no proof that Arctic Cat considered itself to be bound by those agreements or that anyone at Arctic Cat signed such agreements.

5.   The only claim for attorneys' fees Arctic Cat has asserted arises under the Dealer Agreements.  Accordingly, there is no basis for such fees to be awarded.

6.   The Court finds for Scholl's on the breach of contract claim and against Arctic Cat.

B.   **Unjust Enrichment Claim**

1.   Arctic Cat's second claim is that Scholl's has been unjustly enriched because it ordered equipment from Arctic Cat for which it did not pay in the amount of $74,922.83.

2.   To prove a claim for unjust enrichment under Illinois law, Arctic Cat must show: (1) an enrichment; (2) an impoverishment; (3) a relationship between those two conditions; (4) the absence of a justification; and; (5) the absence of a remedy provided by law.[16]

3.   Unjust enrichment is a equitable doctrine.[17]

4.   Scholl's claims that Arctic Cat failed to show the absence of a justification because Scholl's withholding of payment was a result of a promise made to Michael Scholl by Michael Killian of Arctic Cat that it would move certain ATV vehicles from his inventory,which would have reduced the total amount of invoiced equipment.

---

[16]*Sherman v.  Ryan,* 393  Ill.App.3d. 712, 734, 911 N.E.2d 378 (2009).
[17]*Lady D's, Inc. v. Enhanced Servs. Billing, Inc.,* 654 F.3d 728, 735 (7th Cir. 2011).

5.      Judge Lindberg expressly rejected this claim as an affirmative cause in the motion for summary judgement filed by Arctic Cat and his finding and judgment against Scholl's on this claim are law of the case.[18]

6.      Even if they were not, the Court does not find evidence sufficient in the record to support this claim.

7.      Accordingly, the Court finds for Arctic Cat on Count II in the amount of $74,922.83.

## C.      Interest

1.      The Court has already ruled that Arctic Cat did not prove the existence of a contract between it and Scholl's.  Accordingly, interest is allowable in Arctic Cat's action in equity for unjust enrichment if the Court, in the exercise of its discretion, finds that equitable considerations warrant such an award.[19] The goal of such an award is to make the injured party whole.[20]

2.      In this case, Scholl's purchased (and kept on purchasing) equipment and did not pay for its purchases. Scholl's neither questioned Arctic Cat about the balances shown on the monthly invoices nor did it question the interest rate that Arctic Cat noted for unpaid balances on each of the invoices.  To allow Scholl's essentially free credit for its substantial unpaid balances (which by now are several years old) would be highly unfair and would not make Arctic Cat whole.

Therefore the Court awards Arctic Cat the interest rate specified on the invoices.

3.      Arctic Cat is directed to submit a Judgment Order consistent with this opinion on or

---

[18]Nov. 16, 2010 Order at 5, dkt.117.

[19]*Tri-G, Inc. v. Burke, Bosselman & Weaver*, 222 Ill.2d 218, 222, 856 N.E.2d 389 (2006).

[20]*In re Estate of Wernick.* 127 Ill.2d  61, 87, 535 N.E.2d 876 (1989).

before October 9, 2012.


**IT IS SO ORDERED.**

**Entered:** <u>**October 3, 2012**</u>

_____

**SUSAN E. COX**
**UNITED STATES MAGISTRATE JUDGE**